Gottfried v. Covington, 2014 NCBC 26.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| WATAUGA COUNTY | 13 CVS 456 |

KENNETH GOTTFRIED,

        Plaintiff,

v.

ORDER AND OPINION

P. ALEXANDER COVINGTON, JR.,
EXPRESSIONS HOLDINGS, INC., ONE
LOVE SMOKE SHOP, INC. and
BENJAMIN COVINGTON,

        Defendants.

*Capua Law Firm, P.A. by Paul A. Capua, R. Scott Tobin, and Michael Volpe for Plaintiff Kenneth Gottfried;*

*Womble Carlyle Sandridge and Rice, LLP by Sarah Motley Stone and Brandie N. Smith, for Defendants P. Alexander Covington, Jr. and Expressions Holdings, Inc.; and*

*Gray, Layton, Kersh, Solomon, Furr & Smith, P.A. by Michael Carpenter and Christopher M. Whelchel for Defendants Benjamin Covington and One Love Smoke Shop, Inc.*

Murphy, Judge.

{1}    THIS MATTER is before the Court on Defendants P. Alexander Covington, Jr. ("A. Covington") and Expressions Holdings, Inc.'s ("Expressions") (collectively, "Expressions Defendants") Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Motion I"), and Defendants Benjamin Covington ("B. Covington") and One Love Smoke Shop, Inc. ("One Love") (collectively, "One Love Defendants") Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Motion II"). Having considered the Motions, the parties' briefs in support of and opposition to the Motions, and the arguments of counsel at the hearing held on April 17, 2014, the Court GRANTS Motions I and II.

# I.

## PROCEDURAL HISTORY

{2}     On September 4, 2013, Plaintiff Kenneth Gottfried ("Plaintiff") filed his Complaint in this action, asserting claims for fraud, breach of contract, unfair and deceptive trade practices, equitable accounting, civil conspiracy to commit conversion, and declaratory judgment.

{3}     Subsequently, the case was designated a mandatory complex business case, and assigned to this Court on October 8, 2013.

{4}     On December 20, 2013, Expressions Defendants filed Motion I, seeking dismissal of Plaintiff's claims for fraud, unfair and deceptive trade practices, and civil conspiracy to commit conversion.  That same day, One Love Defendants filed Motion II to dismiss Plaintiff's claims for unfair and deceptive trade practices, equitable accounting, and civil conspiracy to commit conversion.

{5}     Thereafter, on January 13, 2014, Plaintiff filed a consolidated response in opposition to the Motions.  On January 27, 2014, the Expressions Defendants and One Love Defendants separately filed replies in support of their Motions.  And, the Court held a hearing on the Motions on April 17, 2014.

# II.

## FACTUAL BACKGROUND

{6}     For purposes of this Order and Opinion, the Court recites those facts from the Complaint that are relevant to the Court's legal determinations.

{7}     Plaintiff formerly owned and operated six retail novelty stores in North Carolina under the trade name "Expressions" ("Expressions Stores"), and was the sole holder of the "Expressions" trademark and other related business trademarks (the "Marks").  (Compl. ¶ 9.)

{8}     In 2007, Plaintiff offered the Expressions Stores and their assets for sale.  (Compl. ¶10.)  A. Covington contacted Plaintiff about purchasing the stores, and the parties negotiated through 2008.  (Compl. ¶10.)  Initially, Plaintiff intended to retain the Marks in the sale, but according to Plaintiff, A. Covington convinced him to transfer the Marks to Expressions in return for royalty payments.  (Compl. ¶

13.)  As part of this negotiation, Plaintiff alleges that A. Covington represented to Plaintiff that he planned to expand Expressions into a nationwide retail novelty business, and that such expansion would occur using the Expressions trade name, resulting in larger royalties for Plaintiff.  (Compl. ¶ 14.)

{9}    In anticipation of the sale, A. Covington incorporated Expressions in July 2008 as a holding company for the Expressions Stores and the Marks.  Per the Complaint, A. Covington is the sole owner of Expressions.  (Compl. ¶ 11.)

{10}    On September 3, 2008, Plaintiff and A. Covington, on behalf of Expressions, entered into an Asset Purchase Agreement ("APA") under which Expressions acquired substantially all of the assets of the Expressions Stores. (Compl. ¶15.)  Contemporaneous with the APA, Plaintiff assigned the Marks to Expressions under the terms of an Intellectual Property Agreement ("IP Agreement").  (Compl. ¶ 15.)

{11}    The IP Agreement outlined a comprehensive plan for royalty payments to Plaintiff after Expressions recouped certain initial start-up costs. In relevant part, Expressions would pay Plaintiff royalties equal to 30% of the net pre-tax income from retail operations of any "New Store." (Compl. Ex. A.) [1]  Pursuant to the IP Agreement, a "New Store" includes "any new physical retail outlet[] owned, operated, and opened by [Expressions] . . . that operate[s] under the trade name 'EXPRESSIONS'."  (Compl. Ex. A § 2(a).)  Expressions further agreed that "any new physical retail outlet owned, operated and opened by Expressions . . . must use the 'EXPRESSIONS' trade name and such store will be considered a New Store and the New Store Royalty will apply . . . ."  (Compl. Ex. A § 2(a).)

{12}    Additionally, the IP Agreement included a non-compete clause that prohibited Plaintiff from engaging in retail or wholesale business substantially

---

[1] "When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment." *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009).  Plaintiff attached the IP Agreement to the Complaint as Exhibit A, and expressly refers to it throughout the Complaint.  The Court, therefore, considers this document in reaching its determinations.

similar to the business of Expressions. (Compl. Ex. A.) The IP Agreement defined such substantially similar business as the sale of certain goods and services termed "Products," including adult novelty gift items, clothing, costumes, tobacco, tobacco pipes and accessories, adult DVDs and body piercing services. (Compl. Ex. A.) However, the IP Agreement contains no reciprocal promise by A. Covington. Indeed, the IP Agreement does not restrict A. Covington in any way from owning or operating new, similar stores not utilizing the Marks.

{13} On May 11, 2010, A. Covington and B. Covington incorporated and opened One Love in Charlotte, North Carolina. According to Plaintiff, One Love is a novelty retail business substantially similar to Expressions that is owned and operated by A. Covington and B. Covington. (Compl. ¶ 16.)

{14} Upon learning about One Love's operations, Plaintiff questioned A. Covington about his and Expressions' involvement with One Love, and A. Covington responded that he was only a "silent partner" in One Love. (Compl. ¶ 25.) However, Plaintiff contends he later discovered that A. Covington actively participated in the operations of One Love.

{15} Given the similarities between the Expressions Stores and One Love, Plaintiff asserts that Expressions should have opened One Love under the Expressions' trade name, and thereafter, should have paid Plaintiff royalties due under the IP Agreement. In failing to do so, Plaintiff argues that Expressions breached the IP Agreement. Furthermore, Plaintiff contends that the Expressions Defendants committed fraud; that the actions of the Expressions Defendants and the One Love Defendants constituted unfair and deceptive trade practices; that the One Love Defendants and A. Covington conspired to convert Plaintiff's royalties; and that Plaintiff is entitled to an equitable accounting from One Love and a declaratory judgment that he has been released from the non-compete in the IP Agreement.

III.

LEGAL STANDARD

{16} The question for the court on a Rule 12(b)(6) motion to dismiss is

"whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank of North Carolina*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).

{17}　"The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. County of Person*, 141 N.C. App. 273, 277–78, 540 S.E.2d 415, 419 (2000) (quoting *Harris*, 85 N.C. App. at 670, 355 S.E.2d at 840). When the complaint fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts that defeat the claim, the complaint should be dismissed under Rule 12(b)(6). *See Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 345–46, 511 S.E.2d 309, 312 (1999).

{18}　While factual allegations must be accepted as true on a motion to dismiss, bare legal conclusions are "not entitled to a presumption of truth." *Miller v. Rose*, 138 N.C. App. 582, 592, 532 S.E.2d 228, 235 (2000). Further, the Court is mindful that averments of fraud must be pled specifically and with particularity. N.C. R. Civ. P. 9(b).

IV.

ANALYSIS

A.

FRAUD

{19}　To state a claim for fraud, a plaintiff must allege a "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 793, 561 S.E.2d 905, 910 (2002) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)).

{20}　"A claim for fraud may be based on an 'affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction

that the parties had a duty to disclose.'" *McKee v. James*, 2013 NCBC 38 ¶ 49 (N.C. Super. Ct. July 24, 2013), http://www.ncbusinesscourt.net/opinions/ 2013_NCBC_38.pdf (quoting *Hardin v. KCS Int'l, Inc.,* 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009)).  Here, Plaintiff alleges that the Expressions Defendants failed to disclose material facts about A. Covington's involvement in One Love.

{21}    "Fraudulent concealment or fraud by omission is, by its very nature, difficult to plead with particularity." *Lawrence v. UMLIC-Five Corp.,* 2007 NCBC 20 ¶ 39 (N.C. Super. Ct. June 18, 2007), http://www.ncbusinesscourt.net/opinions/ 2007_NCBC_20.pdf.  Thus, Plaintiff must allege:

> (1) the relationship [between plaintiff and defendant] giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what [the defendant] gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*Lawrence*, 2007 NCBC 20 ¶ 39 (adopting *Breeden v. Richmond Cmty. Coll.,* 171 F.R.D. 189, 195–96 (M.D.N.C. 1997)).

{22}    "A duty to speak may arise: (1) in the context of a fiduciary relationship, (2) where 'a party has taken affirmative steps to conceal material facts from the other,' or (3) 'where one party has knowledge of a latent defect in the subject matter of the negotiations . . . .'" *McKee*, 2013 NCBC 38 ¶ 51 (quoting *Harton v. Harton*, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (1986)).

{23}    Plaintiff initially argues that the Expressions Defendants owed him a fiduciary duty to disclose the information.  However, the factual allegations do not support such a claim.  Although Plaintiff alleges a relationship of trust, there are no specific factual allegations to support this assertion, nor is there any allegation of dominion and control by the Expressions Defendants.  *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 474, 675 S.E.2d 133, 137 (2009) ("Although our courts have broadly defined fiduciary relationships, no such relationship arises absent the existence of dominion and control by one party over another.").  The facts as alleged

simply describe two parties bound to each other under the terms of a contract negotiated at arm's length, which does not in itself create a fiduciary relationship between the parties. *See Branch Banking & Trust, Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992).

{24} Next, Plaintiff argues that the Expressions Defendants took affirmative steps to conceal their connection to One Love, giving rise to a duty to fully disclose their involvement to Plaintiff. While the allegations support Plaintiff's claim that A. Covington hid his true involvement with One Love, this concealment was not of a material fact relevant to the transaction between the parties. Under the IP Agreement, A. Covington remained free to engage in other businesses, even similar, competing businesses. The IP Agreement only constrained Expressions from opening similar businesses under a different name, and Plaintiff does not allege that Expressions had any ownership interest or involvement in One Love. Even accepting the allegations as true, the Court does not discern any concealment or misrepresentation of a *material* fact.

{25} Furthermore, Plaintiff failed to allege how he actually relied on the concealment to his detriment. Although Plaintiff includes the conclusory allegation that he relied on the Expressions Defendants' omissions, there are no factual allegations regarding what actions Plaintiff took or refrained from taking in reliance thereon.[2] Instead, Plaintiff merely complains that he has been denied royalties due under the IP Agreement. It seems Plaintiff's injury is based on the alleged breach of contract rather than any reliance on the Expressions Defendants' misrepresentations or concealment. The Court, therefore, concludes that Plaintiff failed to sufficiently allege a claim for fraud.

{26} Accordingly, the Court hereby GRANTS Motion I with respect to Plaintiff's claim for fraud, and DISMISSES the claim with prejudice.

---

[2] The Court notes that Plaintiff did not allege or argue that the Expressions Defendants fraudulently induced Plaintiff to execute the IP Agreement through their representations about developing the business nationwide. Rather Plaintiff's claim relies solely on the Expressions Defendants' actions in carrying out their obligations under the IP Agreement after execution.

B.

## UNFAIR AND DECEPTIVE TRADE PRACTICES

{27} To properly state a claim for unfair and deceptive trade practices, a plaintiff must allege that "(1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." *Phelps-Dickson Builders, LLC v. Amerimann Partners*, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005) (citing *Edwards v. West*, 128 N.C. App. 570, 574, 495 S.E.2d 920, 923 (1998)). In this case, Plaintiff alleges that both the Expressions Defendants and the One Love Defendants committed unfair and deceptive trade practices.

1.

## THE EXPRESSIONS DEFENDANTS

{28} The Expressions Defendants argue that Plaintiff's claim fails because it attempts to elevate a breach of contract claim to an unfair and deceptive trade practices claim.

{29} "Ordinarily, under section 75-1.1, a mere breach of contract does not constitute an unfair or deceptive act . . . ." *Cullen v. Valley Forge Life Ins. Co.*, 161 N.C. App. 570, 578, 589 S.E.2d 423, 430 (2003) (citing *Becker*, 149 N.C. App. at 794, 561 S.E.2d at 910). To proceed with such a claim for unfair and deceptive trade practices, "[t]he plaintiff must show substantial aggravating circumstances attending the breach . . . ." *Eastover Ridge, LLC v. Metric Constructors, Inc.*, 139 N.C. App. 360, 368, 533 S.E.2d 827, 833 (2000) (internal quotation and citation omitted). To be sure, "[i]t is 'unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations.'" *Id.* (quoting *Broussard v. Meineke Muffler Discount, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998)).

{30} In alleging his claim for unfair and deceptive trade practices, Plaintiff relies on the same facts underlying his claim for breach of contract and fraud. To the extent it relies on the allegations of fraud, Plaintiff's claim for unfair trade

practices fails for the same reasons discussed above, leaving the Court solely with the underlying claim for breach of contract. Without the aggravating fraud claim, Plaintiff has not pled substantial aggravating circumstances attending the breach that would rise to the level of an unfair or deceptive act. The Court concludes, therefore, that Plaintiff's claim against the Expressions Defendants fails as a matter of law.

{31} Accordingly, the Court GRANTS Motion I as to Plaintiff's unfair and deceptive trade practices claim, and hereby DISMISSES the claim against the Expressions Defendants with prejudice.

2.

THE ONE LOVE DEFENDANTS

{32} As to the One Love Defendants, the Complaint is devoid of allegations revealing any individual actions by One Love or B. Covington other than their association with A. Covington. Plaintiff does not allege that either made any misrepresentations or were parties to any contract with Plaintiff. Indeed, Plaintiff does not allege any prior relationship or interaction with One Love or B. Covington beyond Plaintiff's interactions with A. Covington related to Expressions. Although Plaintiff alleged a civil conspiracy, Plaintiff limited his conspiracy claim to the alleged conversion of royalties, and did not argue that any such claim supported the unfair and deceptive trade practices claim.[3] Instead, Plaintiff relies solely on the alleged actions of the Expressions Defendants to sustain this claim. Without an allegation of an unfair or deceptive act committed by the One Love Defendants, the Court concludes that Plaintiff cannot proceed with this claim.[4]

---

[3] In any case, as discussed below, Plaintiff's claim for conspiracy to commit conversion fails, and thus, would not allow Plaintiff's claim for unfair and deceptive trade practices to survive.

[4] Because the Court dismissed Plaintiff's unfair and deceptive trade practices claim against the Expressions Defendants, the Court need not address Plaintiff's argument that One Love is the alter ego of Expressions, and can be held liable for Expressions' actions. However, the Court notes that there is only one allegation in the Complaint that asserts, as a legal conclusion, that One Love is the alter ego of Expressions, (Compl. ¶ 23), and none of the required factual allegations to support that claim appear anywhere in the Complaint. As such, it is unlikely that this claim would survive even if the Court were to reach this argument.

{33} Accordingly, the Court GRANTS Motion II as to this claim. The Court hereby DISMISSES Plaintiff's claim for unfair and deceptive trade practices against the One Love Defendants with prejudice.

C.

EQUITABLE ACCOUNTING

{34} "The remedy of an equitable accounting may be available when a plaintiff has asserted a valid claim for relief in equity and an accounting is necessary to compel discovery of information regarding accounts held exclusively by the defendant." *Mkt. Choice, Inc. v. New England Coffee Co.*, 2009 U.S. Dist. LEXIS 73627 at *35–*36 (W.D.N.C. Aug. 18, 2009) (citing *Dunn v. Johnson*, 115 N.C. 249, 20 S.E. 390, 390–91 (1894), and *Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 70, 614 S.E.2d 328, 337 (2005)). Nevertheless, the Court will not grant equitable relief where a party has a full and complete remedy at law. *See Hinson v. United Fin. Servs., Inc.*, 123 N.C. App. 469, 473, 473, S.E.2d 382, 385 (1996). In requesting an equitable accounting, Plaintiff must allege facts that warrant an equitable remedy. *Wilmar, Inc. v. Liles*, 13 N.C. App. 71, 74, 185 S.E.2d 278, 280 (1971).

{35} Plaintiff contends that he needs an accounting from One Love to assess the amount of royalties due under the IP Agreement. However, Plaintiff may obtain this relief through discovery related to his breach of contract claim. Furthermore, Plaintiff failed to allege or argue any clear reason why discovery would be insufficient, other than a vague assertion that "the statutory limitations or Court rules or orders which may limit discovery may not be coextensive with the equitable rights to an accounting." (Pl.'s Br. Opp. Mot. II 14–15.) The Court finds this argument unavailing, and concludes that Plaintiff has failed to sufficiently allege facts that warrant an equitable accounting.

{36} Accordingly, the Court GRANTS Motion II, and hereby DISMISSES Plaintiff's claim for equitable accounting with prejudice.

D.

CIVIL CONSPIRACY TO COMMIT CONVERSION

{37}    "The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme. *Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008) (internal quotation and citation omitted). "It is well established that 'there is not a separate civil action for civil conspiracy in North Carolina.'" *Piraino Bros., LLC v. Atl. Fin. Group, Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011) (quoting *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005)). "Instead, 'civil conspiracy is premised on the underlying act.'" *Id.* (quoting *Harris v. Matthews*, 361 N.C. 265, 273, n.2, 643 S.E.2d 566, 571, n.2 (2007)).

{38}    Plaintiff alleges conversion as the underlying tort for his civil conspiracy claim. Specifically, Plaintiff argues that A. Covington and the One Love Defendants conspired to convert the royalty payments due to Plaintiff under the IP Agreement.

{39}    "Conversion is defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000). However, "only goods and personal property are properly the subjects of a claim for conversion. A claim for conversion does not apply to . . . intangible interests such as business opportunities and expectancy interests . . . ." *Id.* Here, the royalties constitute an intangible, contractual expectancy under the IP Agreement, and are not subject to a claim for conversion. Plaintiff's underlying claim for conversion therefore fails, leaving no premise for the civil conspiracy claim.[5]

---

[5] The Court also notes that Plaintiff made no attempt to argue that the civil conspiracy claim was based on any other underlying tort alleged in the Complaint.

{40}    The Court GRANTS Motions I and II with respect to Plaintiff's claim for civil conspiracy to commit conversion, and hereby DISMISSES the claim with prejudice.

V.

CONCLUSION

{41}    For the reasons stated above, the Court GRANTS Motions I and II, and accordingly, DISMISSES with prejudice Plaintiff's claims for fraud, unfair and deceptive trade practices, equitable accounting, and civil conspiracy to commit conversion.

SO ORDERED, this 25th day of June 2014.