ANTHONY W. CULLEN, PLAINTIFF v. VALLEY FORGE LIFE INSURANCE COMPANY, CNA LIFE INSURANCE COMPANY, MONEYMETRICS INSURANCE AGENCY, INC., PIEDMONT CAROLINAS GROUP, LLC, AND MARK C. FLUR, DEFENDANTS

No. COA02-1328

(Filed 16 December 2003)

## 1. Insurance— life insurance—good health provision—waiver by actions

An insurer may not avoid coverage by asserting provisions in the contract which it had waived by actions inconsistent with an intent to enforce those provisions. Defendant negotiated plaintiff's check, received and granted a change of beneficiary request, and did not claim that plaintiff had violated the "good health" provision of the contract or assert that it intended to deny coverage

on this basis until more than three months after it learned of plaintiff's melanoma.

## 2. Accord and Satisfaction— insurance dispute—misrepresentation

There was no accord and satisfaction in an insurance dispute where the basis of the accord was defendant's representation that coverage had never come into effect, which defendant knew to be false.

## 3. Unfair Trade Practices— insurance—denial of coverage—misrepresentation

Summary judgment was correctly granted for plaintiff on an unfair and deceptive practices claim arising from the denial of insurance coverage. Deceptive practices by the party breaching the contract allow the plaintiff to recover for either breach of contract or unfair practices. Reliance on the misrepresentation was not necessary to show injury.

## 4. Unfair Trade Practices— attorney fees—insurance claim

The trial court did not err or abuse its discretion by awarding attorney fees to plaintiff after granting summary judgment for plaintiff on an unfair and deceptive practices claim arising from an insurance company's refusal to pay benefits.

## 5. Civil Procedure— summary judgment—discovery incomplete—information sought immaterial

The trial court did not err by granting summary judgment for plaintiff on an insurance claim even though defendant had contended in an affidavit that discovery was incomplete. Nothing sought by defendant bore on the issues in this case.

Appeal by defendants from judgment entered 8 March 2002 by Judge Orlando F. Hudson, Jr., in Durham County Superior Court. Heard in the Court of Appeals 21 August 2003.

*Faison & Gillespie, by O. William Faison, Reginald B. Gillespie, Jr., and Kristen L. Beightol, for plaintiff-appellee.*

*Smith Moore L.L.P., by James G. Exum, Jr. and Samuel O. Southern, and Drinker Biddle & Reath, L.L.P., by Stephen C. Baker and John B. Dempsey, for defendants-appellants Valley Forge Life Insurance Company and CNA Life Insurance Company.*

**CULLEN v. VALLEY FORGE LIFE INS. CO.**

[161 N.C. App. 570 (2003)]

CALABRIA, Judge.

This appeal arises from the trial court's granting of Anthony W. Cullen's ("plaintiff")[1] summary judgment motion awarding plaintiff $499,605.02 for breach of a life insurance contract, treble damages for unfair and deceptive practices, costs, and attorneys' fees. We affirm in part and reverse in part.

In the early 1990's, Marc Flur ("Flur"), plaintiff's insurance agent and acquaintance, contacted him to discuss insurance policies. Plaintiff subsequently applied for a one million dollar life insurance policy. The application process required plaintiff to disclose his medical history. Although plaintiff listed prior surgeries, treatment for a skin disorder, and Crohn's disease (a degenerative gastrointestinal disorder), his application was approved.

Each year, Flur and plaintiff met to discuss plaintiff's insurance needs. In 1999, around the time of the existing life insurance policy's conversion date, plaintiff asked Flur about increasing his life insurance coverage for the benefit of his children due to an increase in the size of plaintiff's family and a more stable financial outlook. Flur explored the options available and presented a $500,000.00 life insurance policy (the "subject policy") application with Valley Forge Life Insurance Company ("Valley Forge").[2]

On 2 April 1999, Flur and plaintiff met and filled out the application. Since plaintiff did not submit a premium with the application, the following provision applied: "insurance will not take effect until the application is approved and accepted by the Company . . . and the policy is delivered while the health of each person proposed for insurance and other conditions remain as described in this application and . . . the first premium . . . has been paid in full."

On 14 April 1999, plaintiff submitted to a medical examination and provided blood and urine samples as required by the application. Plaintiff also authorized the release of his medical records. These records disclosed the existence of a "blood blister" he had noticed

---

1. Plaintiff passed away on 5 April 2002 during the pendency of this appeal. Accordingly, this Court allowed a motion to substitute a party pursuant to Rules 37 and 38(a) of the North Carolina Rules of Appellate Procedure. Rod N. Santomassimo, Co-Administrator CTA of the Estate of Anthony William Cullen has been substituted for Anthony W. Cullen.

2. CNA Life Insurance Company ("CNA") is a registered service mark, trade name, and domain name. For purposes of this appeal, Valley Forge will refer both to CNA and Valley Forge.

on his back in late 1998. Valley Forge reviewed those records and "need[ed] to know what was the diagnosis, treatment and current condition." Flur was asked to inquire concerning the blood blister. Despite the fact that Flur and plaintiff both agree plaintiff did not represent the blood blister had gone away, Moneymetrics, the company acting as Flur's general agent, reported to Valley Forge the "blood blister went away without any treatment needed." On 19 May 1999, the subject policy was approved, and Flur contacted plaintiff to inform him that he would collect the premium upon delivery of the subject policy.

On 26 May 1999, plaintiff had a regularly scheduled appointment with Dr. Kim Isaacs ("Dr. Isaacs"), his primary care physician since 1994, for his Crohn's disease and inquired as to the blood blister on his back. Dr. Isaacs arranged for plaintiff to see a dermatologist to perform a biopsy and eliminate the possibility of melanoma, a form of skin cancer. An analysis of the biopsy revealed that the blood blister was in fact melanoma. Plaintiff was informed of the diagnosis on 2 June 1999.

On 11 June 1999, plaintiff and Flur met, Flur delivered the subject policy, and plaintiff paid the premium of $394.98. At some point in time, Flur and plaintiff completed a second life insurance application for additional coverage with Valley Forge. Plaintiff underwent a second medical examination and submitted a medical supplement on 14 June 1999. The information in the medical supplement included that plaintiff had been treated for a "[d]isorder of the skin or lymph glands, cyst, tumor or cancer" and an additional handwritten answer further indicated "melanoma on back—will be removed 6/17/99 Dr. Benjamin Calvo UNC Hospitals." Diane Waggoner, the nurse Valley Forge procured to conduct both medical examinations of plaintiff for the purposes of his applications for life insurance, witnessed the medical supplement.

Valley Forge deposited plaintiff's premium payment, which cleared plaintiff's bank account on 17 June 1999. On 9 July 1999, Valley Forge complied with plaintiff's request to change the beneficiary named under the subject policy. Subsequently, in a letter from Valley Forge dated 21 September 1999, plaintiff learned his second application for insurance was declined. In addition, the letter informed him that, regarding the subject policy, "no coverage or contract was ever in effect" and that "no coverage ever existed." Valley Forge included a refund check for the premium payment, which was eventually re-issued and deposited by plaintiff.

CULLEN v. VALLEY FORGE LIFE INS. CO.

[161 N.C. App. 570 (2003)]

Plaintiff filed suit on 11 June 2001 against Flur, Valley Forge, CNA, Moneymetrics, and Piedmont Carolinas Group, L.L.C. seeking a judgment declaring he was insured under the subject policy[3] and later amended his complaint to include a claim for unfair and deceptive practices arising out of the same transaction as the breach of contract action. Valley Forge answered asserting numerous defenses including, *inter alia*, accord and satisfaction and that plaintiff's health, when the policy was delivered and the premium paid, was not the same as his health as described in the application. On 18 and 24 January 2002, plaintiff's "Motion for Summary Judgment or Partial Summary Judgment" against Valley Forge was heard. Valley Forge opposed the motion, asserting discovery was not yet complete. On 8 March 2002, the trial court granted plaintiff's motion for summary judgment on his claims against Valley Forge, awarding plaintiff in excess of 2.2 million dollars for breach of contract and unfair and deceptive practices as well as attorneys' fees and costs.

On appeal, we find the issue of waiver controlling on plaintiff's breach of contract claim. The ramifications of our holding concerning waiver and the undisputed surrounding circumstances are, moreover, dispositive of plaintiff's remaining claims and Valley Forge's defenses. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001). "The rule is designed to permit penetration of an unfounded claim or defense in advance of trial and to allow summary disposition for either party when a fatal weakness in the claim or defense is exposed." *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975). The party moving for summary judgment has the burden of showing that there is no genuine issue as to any material fact. *Dixie Chemical Corp. v. Edwards*, 68 N.C. App. 714, 715, 315 S.E.2d 747, 749 (1984).

I. Waiver

[1] A life insurance policy is a contract. *Motor Co. v. Insurance Co.*, 233 N.C. 251, 253, 63 S.E.2d 538, 540 (1951). As such, the parties entering into the insurance contract may agree upon "its terms, provisions and limitations." *Allen v. Insurance Co.*, 215 N.C. 70, 72, 1 S.E.2d 94, 95 (1939). "Waiver is 'an intentional relinquishment or abandonment of a known right or privilege.' " *Medearis v. Trustees of*

---

3. Plaintiff does not contest Valley Forge's right to deny coverage under the second life insurance policy application.

*Myers Park Baptist Church*, 148 N.C. App. 1, 10, 558 S.E.2d 199, 206 (2001) (citation omitted). Although "[w]aiver is a mixed question of law and fact[, w]hen the facts are determined, it becomes a question of law." *Hicks v. Insurance Co.*, 226 N.C. 614, 619, 39 S.E.2d 914, 918 (1946).

As we have previously held, waiver of a provision in an insurance policy " 'is predicated on knowledge on the part of the insurer of the pertinent facts and conduct thereafter inconsistent with an intention to enforce the condition.' " *Town of Mebane v. Insurance Co.*, 28 N.C. App. 27, 32, 220 S.E.2d 623, 626 (1975) (quoting *Hicks*, 226 N.C. at 617, 39 S.E.2d at 916). "Ordinarily, an insurance company is presumed to be cognizant of data in the official files of the company, received in formal dealings with the insured." *Gouldin v. Insurance Co.*, 248 N.C. 161, 165, 102 S.E.2d 846, 849 (1958) (citing *Hicks*, 226 N.C. 614, 39 S.E.2d 914; *Robinson v. B. of L.F. and E.*, 170 N.C. 545, 87 S.E.2d 537 (1916)). Moreover, " '[k]nowledge of facts which the insurer has or should have had constitutes notice of whatever an inquiry would have disclosed and is binding on the insurer.' " *Id.* (citation omitted).

To comply with our standard of review, the operative facts, viewed in the light most favorable to Valley Forge, are as follows: plaintiff did not disclose the existence of the blood blister in the subject policy application, but the medical records, obtained as part of the application, revealed its existence. Plaintiff did not disclose the diagnosis of malignant melanoma when applying for additional life insurance with Valley Forge, but the medical supplement tendered to Valley Forge on 14 June 1999 detailed the diagnosis and proposed treatment. Accordingly, Valley Forge had notice that the blood blister remained, that it had been diagnosed as melanoma, and that it would be removed. Nonetheless, Valley Forge negotiated plaintiff's check in payment of the subject policy's premium, received without objection a request for a change of beneficiary, and granted that request almost a month after knowledge of the pertinent facts concerning plaintiff's health. Notably, at no time before 21 September 1999, more than three months after Valley Forge learned of the melanoma, did Valley Forge make the assertion that plaintiff had violated the "good health" provision, that the "good health" provision precluded coverage from taking effect or prevented the contract from being concluded, or that Valley Forge intended to deny coverage on that basis. We hold this conduct was inconsistent with an intent to enforce the provision; therefore, Valley Forge waived the right to enforce it.

Our holding today is further supported by our analysis in *Hardy v. Integon Life Ins. Co.*, 85 N.C. App. 575, 355 S.E.2d 241 (1987), where this Court examined whether an insurer could avoid, on the basis of misrepresentation, the obligations in an insurance contract where the submitted medical records revealed the applicant had squamous cell carcinoma although the application represented the applicant had never had cancer. This Court charged the insurer with the knowledge of what was contained in the medical records they received but held the insurer had not, as a matter of law, waived its right to avoid coverage. This was so because there remained a question of fact concerning, in part, whether a reasonable inquiry would have disclosed a subsequent operation and diagnosis of metastasis not contained in the submitted medical records. *Id.* Our holding in *Hardy* makes clear that if, as here, the insurer has knowledge of all pertinent facts and if reasonable inquiry would reveal no other information exists other than that submitted in the medical records and application, then the insurer waives the right to assert provisions in the insurance contract permitting the insurer to avoid coverage by acting inconsistently with the intent to enforce those provisions.

II. Accord and Satisfaction

[2] Valley Forge asserts the defense of accord and satisfaction operates as a bar to plaintiff's claim because plaintiff accepted and cashed the returned premium check. Valley Forge contends the check refunding plaintiff's premium for the policy was accompanied by the representation that "no coverage ever existed" and, therefore, constituted a legal compromise accepted by plaintiff when he cashed the check.

> "An 'accord' is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or tort, something other than or different from what he is, or considers himself, entitled to; and a 'satisfaction' is the execution or performance, of such agreement."

*Dobias v. White*, 239 N.C. 409, 413, 80 S.E.2d 23, 27 (1954) (citation omitted). Accord and satisfaction is a "method of discharging a contract, or settling a cause of action arising either from a contract or a tort, by substituting for such contract or cause of action an agreement for the satisfaction thereof, and an execution of such substitute agreement." *Shopping Center v. Life Insurance Corp.*, 52 N.C. App. 633, 642-43, 279 S.E.2d 918, 924-25 (1981) (quoting *Prentzas v.*

CULLEN v. VALLEY FORGE LIFE INS. CO.

[161 N.C. App. 570 (2003)]

*Prentzas*, 260 N.C. 101, 103-04, 131 S.E.2d 678, 680-81 (1963)). "The word 'agreement' implies the parties are of one mind—all have a common understanding of the rights and obligations of the others—there has been a meeting of the minds." *Moore v. Bobby Dixon Assoc.*, 91 N.C. App. 64, 67, 370 S.E.2d 445, 447 (1988) (citation omitted).

Normally, the existence of an accord and satisfaction is a question of fact for the jury. *Id.* "Establishing an accord and satisfaction . . . as a matter of law requires evidence that permits no reasonable inference to the contrary and that shows the 'unequivocal' intent of one party to make and the other party to accept a lesser payment in satisfaction . . . of a larger claim." *Moore v. Frazier*, 63 N.C. App. 476, 478-79, 305 S.E.2d 562, 564 (1983). However, any accord in the present case would be voidable by plaintiff if, when the accord was purportedly made, it was premised upon a misrepresentation not known to plaintiff at that time. *See Holley v. Coggin Pontiac*, 43 N.C. App. 229, 234, 259 S.E.2d 1, 5 (1979).

In this case, we find there was a misrepresentation made to plaintiff dispositive of Valley Forge's defense of accord and satisfaction. Valley Forge returned a check for $394.98, the amount of the premium paid by plaintiff, representing "no coverage or contract was ever in effect" and "no coverage ever existed." The evidence, however, is uncontradicted that Valley Forge knew its representations in the 21 September 1999 letter to plaintiff were erroneous. Valley Forge's own internal memo dated 27 July 1999 raised the question of "why when we knew that the melanoma was going to be excised on 6/17 that we issued anyway." On 26 July 1999, an internal memo read "put note on [the subject policy] file 'Do not *reinstate* without underwriter review.' " Another memo admitted the melanoma was made known on 14 June 1999. In addition, on 24 July 1999, an internal memo stated the policy was "approved before dx [diagnosis] of mm [melanoma]." Finally, a memo on 26 July 1999 stated "[n]ot sure how to handle recently activated file. Appears melanoma came up after app [approval] date."

Valley Forge's representations in its 21 September 1999 letter to plaintiff stand in stark contradistinction to its own internal memos. The memos clearly indicate Valley Forge knew coverage did in fact exist, yet chose to represent to plaintiff that coverage had never come into effect. Given the fact that this misrepresentation was the basis upon which the accord was purportedly made, there could be no agreement, and this defense is precluded as a matter of law. We

hold the trial court correctly granted summary judgment to plaintiff regarding whether Valley Forge breached the contract of insurance.

III. Unfair and Deceptive Practices

[3] In addition to granting plaintiff's summary judgment motion for his breach of contract claim, the trial court granted summary judgment on plaintiff's unfair and deceptive practices claim and awarded treble damages under N.C. Gen. Stat. § 75-16 (2001) based upon the misrepresentations contained in the 21 September 1999 letter. North Carolina General Statutes § 75-1.1 (2001) states that unfair or deceptive acts or practices in or affecting commerce are unlawful. "To prevail on a claim of unfair and deceptive . . . practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998). On appeal, Valley Forge concedes the second element has been met; therefore, we confine our discussion to whether plaintiff carried his burden on the first and third elements.

Initially, we note plaintiff's unfair and deceptive practices claim is not barred simply because plaintiff prevailed in his breach of contract claim. Ordinarily, "[u]nder section 75-1.1, a mere breach of contract does not constitute an unfair or deceptive act[,]" *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 794, 561 S.E.2d 905, 910 (2002) (citing *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992)); however, aggravating circumstances, such as deceptive conduct by the breaching party, can trigger the provisions of the Act, *id.* (citing *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989); *see also Poor v. Hill*, 138 N.C. App. 19, 28, 530 S.E.2d 838, 845 (2000); *Mosley & Mosley Builders v. Landin, Ltd.*, 97 N.C. App. 511, 518, 389 S.E.2d 576, 580 (1990).

> Where the same course of conduct gives rise to a traditionally recognized cause of action, as, for example, an action for breach of contract, and as well gives rise to a cause of action for violation of G.S. 75-1.1, damages may be recovered either for the breach of contract, or for violation of G.S. 75-1.1 . . . .

*Marshall v. Miller*, 47 N.C. App. 530, 542, 268 S.E.2d 97, 103 (1980), *modified and aff'd*, 302 N.C. 539, 276 S.E.2d 397 (1981). *See also Canady v. Mann*, 107 N.C. App. 252, 419 S.E.2d 597 (1992). Where

this occurs, "[w]e treat plaintiff's arguments as an election of damages for unfair and deceptive trade practices[.]" *Garlock v. Henson*, 112 N.C. App. 243, 246-47, 435 S.E.2d 114, 116 (1993). Accordingly, plaintiff was entitled to proceed on his unfair and deceptive practices claim despite having prevailed in his breach of contract claim.

North Carolina General Statutes § 58-63-15(1) (2001) (emphasis added) provides, in pertinent part, as follows:

> The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:
>
> (1) Misrepresentations and False Advertising of Policy Contracts.—Making . . . *any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance.*

A violation of this statute constitutes an unfair or deceptive practice in violation of N.C. Gen. Stat. § 75-1.1 as a matter of law. *Jefferson-Pilot Life Ins. Co. v. Spencer*, 336 N.C. 49, 53, 442 S.E.2d 316, 318 (1994). Since our discussion concerning Valley Forge's defense of accord and satisfaction makes clear that the 21 September 1999 letter constituted a misrepresentation to plaintiff, the policyholder, the only question we must answer regarding the first element of N.C. Gen. Stat. § 75-1.1 is whether the misrepresentation had the "purpose of inducing or tending to induce" plaintiff to surrender coverage.

We are mindful that summary judgment is generally inappropriate "where issues such as motive [and] intent . . . are material and where the evidence is subject to conflicting interpretations." *Creech v. Melnik*, 347 N.C. 520, 530, 495 S.E.2d 907, 913 (1998). However, Valley Forge's internal memos compel the conclusion that Valley Forge, despite knowing coverage existed, represented and attempted to convince plaintiff that there had never been coverage under the subject policy. Where the only reasonable inference is existence or non-existence, purpose may be adjudicated by summary judgment when the essential facts are made clear of record. The undisputed facts in the record compel the conclusion that the purpose of the letter accompanying the check was to induce plaintiff to accept the returned premium check under the false impression that Valley Forge was correct in claiming coverage had never existed. Thus, the evidence supports the existence of an unfair and deceptive act by Valley Forge.

CULLEN v. VALLEY FORGE LIFE INS. CO.

[161 N.C. App. 570 (2003)]

The 21 September 1999 letter also establishes the third element, an injury proximately caused by Valley Forge, because it represented no coverage existed and reflected Valley Forge's position declining coverage to plaintiff as the beneficiary of the subject policy. While this is the same injury forming the basis for plaintiff's breach of contract claim, it is also sufficient for the purposes of an unfair and deceptive practices claim. *See Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 794, 561 S.E.2d 905, 911 (2002) (allowing an unfair and deceptive practices claim to go forward despite it being premised upon the same alleged facts as the breach of contract claim); *Garlock v. Henson*, 112 N.C. App. 243, 246, 435 S.E.2d 114, 116 (1993) (allowing the same set of facts to form the basis for both breach of contract and unfair and deceptive practices claim but allowing recovery for only one claim).

Valley Forge contends plaintiff cannot show injury in the absence of reliance on the misrepresentation. We disagree. First, neither the statutory language of N.C. Gen. Stat. § 58-63-15(1) nor the statutory language of N.C. Gen. Stat. § 75-1.1 require reliance in order to show causation. Indeed, N.C. Gen. Stat. § 58-65-15(1) specifically states the misrepresentation need only have the "purpose of inducing or tending to induce" the loss of insurance coverage. The focus is on the insurance company, not the effect on the policyholder. Moreover, our Courts have clearly held that *actual* deception is not an element necessary under N.C. Gen. Stat. § 75-1.1 to support an unfair or deceptive practices claim. *See Johnson v. Insurance Co.*, 300 N.C. 247, 265, 266 S.E.2d 610, 622 (1980), *overruled in part on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988); *Poor v. Hill*, 138 N.C. App. 19, 29, 530 S.E.2d 838, 845 (2000). Accordingly, actual reliance is not a factor. We thus conclude that there were no genuine issues of material fact that Valley Forge engaged in an unfair and deceptive practice, and plaintiff was entitled to judgment as a matter of law with respect to this claim.

IV. Attorneys' Fees

[4] The trial court, in its discretion, awarded attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1 (2001). Valley Forge contends the trial court erred in awarding attorneys' fees because the "order entering summary judgment for Cullen on his unfair trade practices claim is error, [and] he is not the prevailing party on that claim." For the reasons stated above, Valley Forge's assertion is incorrect. In the alternative, Valley Forge contends the trial court abused its discretion in awarding attorneys' fees because there were "genuine disputes about

CULLEN v. VALLEY FORGE LIFE INS. CO.

[161 N.C. App. 570 (2003)]

what happened and what that means [and it cannot] with any fairness be maintained that Valley Forge's refusal to settle was unwarranted." Our holding makes clear that any contention premised on the existence of genuine issues of material fact is also without merit. Any other grounds upon which Valley Forge could have contested this ruling are not argued in Valley Forge's brief or supported by citation to authority in violation of our Rules of Appellate Procedure. N.C.R. App. P. 28(a),(b)(6) (2003). In addition, independent review by this Court reveals no abuse of discretion by the trial court that would otherwise justify reversing the award of attorneys' fees. Accordingly, this assignment of error is overruled.

V. Rule 56(f)

[5] Finally, Valley Forge asserts the entirety of the trial court's summary judgment ruling was improper under our Supreme Court's holding in *Kidd v. Early* because a Rule 56(f) affidavit had been offered in opposition. *See Kidd v. Early*, 289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976) (holding "summary judgment may be granted for a party with the burden of proof on the basis of his own affidavits (1) when there are only latent doubts as to the affiant's credibility; (2) when the opposing party has failed to introduce any materials supporting his opposition, failed to point to specific areas of impeachment and contradiction, and failed to utilize Rule 56(f); and (3) when summary judgment is otherwise appropriate"). The Rule 56(f) affidavit in the instant case argued discovery was incomplete and "some, all or none" of the remaining discovery could contradict matters relied on by plaintiff in his summary judgment motion. Specifically, Valley Forge wished to depose plaintiff's health care providers and Moneymetrics and to subpoena "document custodians for health insurance records, phone records, other insurance applications, and possible additional medical records."

Rule 56(f) contemplates when affidavits are unavailable and provides as follows:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

N.C. Gen. Stat. § 1A-1, Rule 56(f) (2001). Even in the face of a Rule 56(f) affidavit, a trial court is permitted to grant summary judgment,

CULLEN v. VALLEY FORGE LIFE INS. CO.

[161 N.C. App. 570 (2003)]

when appropriate, based upon the materials presented at any stage of the proceedings. *N.C. Council of Churches v. State of North Carolina*, 120 N.C. App. 84, 93, 461 S.E.2d 354, 360 (1995).

In the instant case, the materials presented to the trial court and in the record before this Court indicate Valley Forge's records, at the time it wrote the 21 September 1999 letter, contained plaintiff's medical supplement, when plaintiff's premium check cleared, when plaintiff requested a change of beneficiary, and when Valley Forge complied with plaintiff's request. Nothing sought by Valley Forge bore on the questions of waiver, accord and satisfaction, or the unfair and deceptive practices at issue in this case. Accordingly, we find the trial court did not err in granting summary judgment despite the fact that Valley Forge had filed a Rule 56(f) affidavit.

VI. Conclusion

In summary, Valley Forge, by its conduct, waived the right to enforce the "good health" provision in the insurance policy. Because Valley Forge's accord and satisfaction defense is premised on a misrepresentation, that defense is disallowed. Plaintiff is entitled to treble damages for unfair and deceptive practices resulting from Valley Forge's 21 September 1999 letter and attorneys' fees awarded as a result of Valley Forge's unwarranted refusal to settle. Plaintiff's recovery on his claim for unfair and deceptive practices claim precludes additional recovery for his breach of contract claim. *Marshall v. Miller*, 47 N.C. App. at 542, 268 S.E.2d at 103 (1980), *modified and aff'd*, 302 N.C. 539, 276 S.E.2d 397 (1981). We have carefully considered the remaining issues and found them to be without merit.

Affirmed in part, reversed in part.

Judges BRYANT and GEER concur.